IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
SUBMITTED ON BRIEFS JULY 14, 2005

## IN THE MATTER OF J.L.C., V.R.C., and E.R.C.
## JOHN RICHARD SIMMONS, ET AL. v. JAMES CORDELL, ET AL.

**Direct Appeal from the Chancery Court for Grundy County**
**No. A-111     Jeffrey F. Stewart, Chancellor**

**No. M2004-00538-COA-R3-CV - Filed December 28, 2005**

### DISSENTING OPINION

I write separately to voice my dissent to the holding reached by the majority in this case. The majority concludes that Father expressly waived the issue of whether the trial court correctly determined him to be voluntarily unemployed. Although Father did state in his brief that he is not challenging the trial court's determination that he is voluntarily unemployed on appeal, I believe the issue should nonetheless be addressed. In doing so, I would hold that the trial court erred in finding that Father was voluntarily unemployed and in imputing potential income to Father on which to base an award of child support.

Rule 13(b) of the Tennessee Rules of Appellate Procedure provides as follows:

(b) Consideration of Issues Not Presented for Review. — Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may *in its discretion* consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) *to prevent prejudice to the judicial process*.

Tenn. R. App. P. 13(b) (2005) (emphasis added). The Advisory Commission Comments to the Rule provide as follows:

This subdivision deals with the very difficult question of when an appellate court should consider an issue not raised by the parties. Generally speaking, control over the issues should reside in the

parties, not in the court. Accordingly, this subdivision provides that review will typically extend only to the issues set forth in the briefs. Only the absence of subject-matter jurisdiction, whether at the trial or appellate level, must be considered by the appellate court regardless of whether it is presented for review. Cases appealed to the wrong appellate court must be transferred pursuant to Rule 17 of these rules. In all the other situations described in this subdivision, the appellate court has discretion to decide whether it will consider a matter not raised by the parties. It is intended that this discretion be sparingly exercised.

I am mindful of our need to use the discretion vested in this Court under Rule 13(b) conservatively.

There is no greater need for this Court to exercise its discretion to review an issue not presented for review, however, than when a trial court enters a finding in direct contravention of established precedent, thereby causing prejudice to the judicial process. *See, e.g., Panzer v. King*, 743 S.W.2d 612, 616 (Tenn. 1988) (recognizing that neither of the parties raised the issue of whether a trial court was correct in granting a new trial, our supreme court stated that "[w]e are presented with a classic case for the application of T.R.A.P. 13(b) that expressly grants the appellate courts authority to consider issues not brought up for review by any party"); *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 Tenn. App. LEXIS 415, at *14–27 (Tenn. Ct. App. June 3, 2003) (exercising our discretion under Rule 13(b) to vacate the termination of the fathers' parental rights due to serious procedural irregularities); *Waterhouse v. Cumberland County Bank*, Nos. 03A01-9102-CH-00056, 03A01-9106-CH-00079, 1991 Tenn. App. LEXIS 808, at *4 (Tenn. Ct. App. Oct. 8, 1991) (recognizing that neither party raised the issue of whether the trial court erred in finding that the plaintiff failed to meet certain requirements found in the Tennessee Rules of Civil Procedure, this Court undertook an examination of the issue pursuant to Rule 13(b)); *Moore v. Moore*, No. 1, 1986 Tenn. App. LEXIS 3201, at *5 (Tenn. Ct. App. Aug. 4, 1986) (noting that, even though the parties did not appeal the issue of whether a valid marriage existed in the first instance, the parties' apparent disregard of the rules governing the marriage process warranted our examination of the issue under Rule 13(b)). The limited exercise of discretion I espouse in this instance promotes this Court's role in correcting clear legal errors by the trial courts of this state so that we do not condone the establishment of an incorrect precedent, thereby preventing confusion for the bench and the bar that would ultimately ensue should we allow such errors to stand.

After reading the trial court's order in this case, there is no mistaking the fact that the trial court concluded that Father was voluntarily unemployed due solely to his incarceration. If any ambiguity did exist in the order, it would be resolved by reference to the trial court's statements to the parties at the conclusion of the hearing in this matter:

> I think first I would like to point out and say for the record I do find that Mr. Cordell has voluntarily put himself in a position of not earning any income. He didn't certainly quit a job but he certainly

-2-

participated in illegal activity that brought about losing his job and becoming incarcerated and put us in this position. No one made him participate in that. It appears he voluntarily chose to do that. So I find that he voluntarily unemployed himself. The question is what could he earn and what could he pay as far as support is concerned? . . . The question of what he could earn is really somewhat in dispute and difficult for this Court to determine based upon the proof before it. And one of the reasons I ask about these prior farm income records is that I think that would have established what he was able to earn off of this farm.

The trial court's finding of voluntary unemployment in its order, which is based on this faulty line of reasoning, constitutes clear error in direct contravention of our existing case law.

"Although there is no requirement that a parent intended to avoid their child support obligations by their actions, we do think that willful or voluntary unemployment or underemployment *must result from an intent on the part of the parent to reduce or terminate his or her income*." **Wilson v. Wilson**, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000) (emphasis added). This Court has previously had occasion to address the correctness of a trial court's finding of willful and voluntary unemployment by an obligor parent under circumstances similar to those in the present case. In **Pennington v. Pennington**, No. W2000-00568-COA-R3-CV, 2001 Tenn. App. LEXIS 192, at *2 (Tenn. Ct. App. Mar. 14, 2001), a wife filed for divorce from her husband in 1999 and sought child support for the parties' children. In 1994, the husband, a doctor, was incarcerated for illegally writing prescriptions for controlled substances. *Id.* at *2–3. The husband was released in 1996, however, he was subsequently arrested in 1998 for possession of cocaine and sentenced to a new prison term. *Id.* at *3. The husband remained incarcerated when the divorce proceedings began in the lower court. *Id.* at *2. The trial court concluded that the amount of the husband's child support obligation should be based upon his potential earning capacity, utilizing the average of his earnings in the five years preceding his first arrest in 1993. *Id.* at *7. However, the trial court did not make a finding of willful and voluntary unemployment on the part of the husband. *Id.* at *10. Having failed to do so, this Court conducted a *de novo* review of the record to determine whether the husband was, in fact, willfully and voluntarily unemployed. *Id.* In concluding that the husband was not willfully and voluntarily unemployed, we held as follows:

The case at hand is analogous to [*Wilson v. Wilson*, 43 S.W.3d 495 (Tenn. Ct. App. 2000)]. In *Wilson*, Ms. Wilson argued that because Mr. Wilson's criminal acts were willful and voluntary, he was willfully and voluntarily underemployed. Likewise, in the case at hand, Ms. Pennington asserts that because Mr. Pennington's criminal act, using cocaine, was willful and voluntary, and because this act led to his incarceration and resulting unemployment, he was willfully and voluntarily unemployed. We decline to make this conclusion. *Mr. Pennington did not intend to become incarcerated and unemployed*

> *when he made the choice to use cocaine; thus, the record does not support a finding that Mr. Pennington was willfully and voluntarily unemployed.* Consequently, the trial court's award of child support based on Mr. Pennington's potential income rather than his net income is reversed. We remand this case to the trial court for a determination of Mr. Pennington's net income and to make an award of child support based on Mr. Pennington's net income.

*Id.* at \*13 (emphasis added); *see also Coates v. Coates*, No. M2001-01928-COA-R3-CV, 2002 Tenn. App. LEXIS 803, at \*7 (Tenn. Ct. App. Nov. 15, 2002) ("This court has rejected the proposition that a parent's dishonest acts which led to unemployment constitute willful and voluntary unemployment. As a logical extension of that principle, we have also held that unemployment or underemployment resulting from incarceration is not willful and voluntary." (citations omitted))).

As in *Pennington*, there is nothing in the record before this Court to indicate that Father intended to become incarcerated and unemployed in an effort to reduce or terminate his income. Thus, the chancellor's calculation of Father's child support obligation based upon his potential income constitutes a clear error of law which this Court should address to prevent prejudice to the judicial process. Accordingly, I would reverse the trial court's holding and remand this case to the chancery court for a determination of Father's net income, consistent with the child support guidelines in effect when this case was tried below,[1] and the entry of a child support award based upon such amount.

_____

ALAN E. HIGHERS, JUDGE

---

[1] This case came to be heard in the chancery court prior to the enactment of the new "income shares" model of the child support guidelines, which took effect in January of 2005. I am cognizant of the limited evidence addressing Father's income in the years prior to his incarceration, which the Appellants attempted to prove in the proceedings below. If, on remand, the chancellor were unable to ascertain Father's net income for the period in question, the child support guidelines in existence when this case came to be heard below provide for such a contingency. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(e) (1994) (providing the amount of income to be used when the obligor fails to produce sufficient evidence of income).